OPINION OF THE COURT
Marianne O. Mizel, J.
Peter C. was married to Catherine C., the mother of Mary Elizabeth and Tara, from 1975 to 1989. During this period, Mary Elizabeth aged from 8 to 22 years old and Tara aged from 11 to 25. Peter C., the former stepfather of these children, now seeks to adopt them. Mr. C. states in his affidavit in support of the adoption petitions that discussion of his adoption of the children of Catherine C. continued even after the parties were divorced. Catherine C.’s affidavit in support of the adop *514 tion also states that adoption of the children was discussed during the parties’ marriage and continued after the divorce. The adoptees state in affidavits in support of the adoption that they do not remember their biological fathers and that Mr. C. assumed the duties and obligations of a father towards them. Both adoptees wish to establish a formal, legal parental relationship with Mr. C. in recognition of the emotional parent-child bonds which presently exist between them.
What distinguishes these adoptions from other reported adoptions in New York State is that Mr. C. has remarried since his divorce from Catherine C. and his present wife does not join in the adoption. Under Domestic Relations Law § 110, an adult unmarried person or an adult husband and his adult wife together may adopt another person. Under the recent case of Matter of Jacob and its companion case, Matter of Dana (86 NY2d 651 [1995]), the Court of Appeals expanded the definition of who can adopt to persons living together in a parent-child relationship, both those who are allowed to marry under New York State law, such as a heterosexual couple with no impediments to marriage, and a homosexual couple, who are not allowed to marry under New York law. Matter of Jacob decided that an adoption in those circumstances would not terminate the parental rights of the child’s biological parent who was the unmarried partner of the adoptive parent. The Court of Appeals declared that New York favored the recognition of the rights and obligations of the child’s second parent without the biological parent’s sexual orientation or marital status being an obstacle to that recognition.
Under statutory law, Mr. C. could have adopted his stepchildren while he was married to their mother under the authority of Domestic Relations Law §§ 110 and 117 (1) (d). Under case law as it presently exists, Mr. C. could have adopted his stepchildren after he was divorced from Catherine C. but before he remarried under the authority of Matter of Jacob (supra). The question before this court is whether he is precluded from adopting his former stepchildren by reason of his remarriage following his divorce from the children’s mother.
Matter of Jacob (supra), while recognizing that adoption statutes must be strictly construed because adoption was unknown at the common law, stated that adoption statutes must harmonize with the intent to secure the best possible home for the child. In this case, both adoptees are adults and their support as children has already been provided by Mr. C., but Matter of Dana (supra) also recognized that inheritance rights, *515 Social Security benefits, and the right to sue for wrongful death are also benefits accruing to the adopted children as a result of the adoption. Matter of Jacob evinces an intent by the Court of Appeals to recognize that society has changed the definition of the family and accord to those nontraditional families as much of the obligations and benefits of the parental relationship as can be endowed by the laws of New York.
Accordingly, this court sees no impediment to the adoption by Peter C. of his former stepchildren. His present wife does not join in the application because there is no intention to terminate Catherine C.’s parental rights and substitute the present Mrs. C. for Catherine C. Catherine C.’s parental rights and obligations will continue after the adoption. Approval of the adoption at this time creates nothing different from what the status would be if Mr. C. had adopted the proposed adoptees during the time he was married to their mother. Following adoption and a subsequent divorce, Mary Elizabeth and Tara would still be the daughters of Catherine C. and Peter C. Upon Peter C.’s remarriage, Mary Elizabeth and Tara would have continued as his daughters and become the stepdaughters of his present wife.
Notice of the adoption is not required to be given to the biological fathers of the proposed adoptees under either one of two rationales. First, both adoptees are adults and consent is specifically not required in that situation (Domestic Relations Law § 111 [4]). Second, from the affidavits submitted in support of the adoption, each biological father abandoned his child, failed to support her, and has had no contact with her or with Catherine C. for many, many years. Each adoptee states that she has no recollection of her biological father. Consent, therefore, is not required under Domestic Relations Law § 111 (2) and (6). The purpose of notice is to allow the biological parent to present evidence to the court as to the best interests of the adoptee (Domestic Relations Law § 111-a [3]). In this case, the adoptees are both adults capable of protecting their own best interests. Who is to receive notice of the adoption of an adult is discretionary with the court when the adoptee is an adult or if the biological parent’s consent to the adoption is not required (Domestic Relations Law § 115 [10]). This court determines that the biological fathers of the proposed adoptees are not entitled to notice of the adoption.
For the foregoing reasons, the court determines that Peter C. *516 is a proper person to petition for adoption of his former stepchildren. The biological fathers of Mary Elizabeth and of Tara are not entitled to notice of the proposed adoptions.